UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ANNE MARIE HAAG, both individually
and on behalf of a class of all others
 similarly situated,

                    Plaintiff,          Case No. 12-cv-6521

      - against -            **AMENDED**
                              **CLASS ACTION**
HYUNDAI MOTOR AMERICA,     **COMPLAINT**

                   Defendant.       **JURY TRIAL DEMANDED**
-----------------------------------------------------x

       Plaintiff, Anne Marie Haag ("Plaintiff"), on behalf of herself and all others

similarly situated, by her undersigned counsel, alleges, against Defendant Hyundai Motor

America, ("Hyundai" or "Defendant"), the following upon personal knowledge as to her

own acts, based on the investigation conducted by her counsel, as to all other allegations:

## SUMMARY OF THE ACTION

      1.     Plaintiff brings this class action on behalf of herself and all other persons

who purchased and/or leased (collectively "purchasers") a Hyundai Santa Fe ("Santa

Fe"), model years 2007 through 2012 ("Class Vehicles") in the State of New York, and

which vehicles had or currently have a defective rotor/caliper and brake assembly (the

"Class").

      2.     As alleged herein in greater detail the Santa Fe vehicles are equipped with

defective brakes.  Due to these defective parts, Santa Fes manifest significant squealing

and premature deterioration of the rotors, calipers, brake assembly and pads and sticking

of such brake components when the brake pedal is applied if the defect is not corrected

by replacement of brake  rotors, calipers, brake assembly and pads.  These defects are

unreasonably dangerous, as they can cause the braking system components to become

severely worn and damaged, and may lead to a complete failure of the braking system.

     3.      By pre-release data and testing, analysis of service and maintenance reports

and trends, knowledge of the material and manufacturing specifications, the quality

imparted to the entire brake assembly and its parts in the process of manufacturing, and

by complaints of its customers, Hyundai was on notice that the Santa Fe vehicles' brake

assemblies were defective and not fit for their intended purpose of properly and

effectively bringing the automobile to a stop.  Hyundai actively concealed and failed to

disclose the existence and nature of said defects from Plaintiff and the Class members at

the time of purchase and thereafter.  With the exception of a limited recall for the rear

brake calipers contained in certain 2011 model year Santa Fe vehicles, Hyundai has not

recalled the Santa Fe to repair the defects, nor has it offered to repair the defects to its

customers free of charge, nor has it offered to reimburse Hyundai owners, present or past,

who incurred costs relating to braking system repairs.   In fact, Hyundai has

misinterpreted and misapplied its warranty to exclude parts which should have been

included, a material fact concealed from Plaintiff and Class members until they sought

coverage under the warranty.

**The Warranty Provisions**

4.      Pursuant to the new vehicle "bumper to bumper" express warranty given to all purchasers of the Santa Fe, Hyundai is responsible for all repair and labor associated with the repair and service of defective parts.  That warranty (referred to herein as the "Basic Warranty") was effectively for 60,000 miles or 60 months, whichever came first. Although the Basic Warranty purports to exclude brake pads, the other brake components involved herein, such as brake rotors, calipers and the brake assembly[1], are not excluded items under the Basic Warranty.   Moreover, brake rotors, brake assemblies and calipers are clearly not "wear and tear items" which one would expect to be excluded.  For example, the Basic Warranty for the 2008 Santa Fe, which, upon information and belief is typical of the basic Warranty for the Class Vehicles herein, states in pertinent part:

> **WARRANTOR**
> Hyundai Motor America (HMA) warrants your new 2009  . . . Hyundai vehicle pursuant to the limited warranties described in this Owner's Handbook.
>
>         \*                   \*                  \*
>
> **WHAT IS COVERED**
> Repair or replacement of any component originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor manufacturing Alabama (HMMA) or Hyundai Motor America (HMA) that is found to be defective on material or workmanship under normal use and maintenance, except any item specifically referred to in the section "What is Not Covered." …
>
> **WARRANTY PERIOD**

---

[1]  The term "brake assembly" in this Complaint refers, specifically, to the portion that holds the brake pads in place.

The warranty period is limited to 5 years from the date of
original retail delivery or date of first use, or 60,000 miles,
whichever occurs first.

                *               *               *

**WHAT IS NOT COVERED**
Normal maintenance items (#) are warranted in normal
service, only when the replacement is the result of a defect in
material or factory workmanship, for 12 months from the date
of original retail delivery of date of first use, or 12,000 miles,
whichever occurs first, or up to the first scheduled
maintenance replacement interval. (#- such as belts, brake
pads and linings, clutch linings, filters, wiper blades and all
bulbs except halogen bulbs which are covered up to 3 years
from the date of original retail delivery or date of first use, or
36,000 miles, whichever occurs first.)

5.      While the Basic Warranty covers the braking system (except for brake pads

and linings as noted above) for 60 months or 60,000 miles, Hyundai has claimed that the

defect's symptoms are caused by normal wear and tear, thereby facially avoiding any

obligation to remedy this problem.  Further, if the defect has occurred after the warranty

expires, Hyundai has also claimed that the warranty on the entire braking system is

inapplicable.  Consequently, Plaintiff and the Class members have been required to pay

for the repairs of the brake assemblies themselves.

6.      Plaintiff alleges that Hyundai is responsible and liable for the costs of

replacing the defective brake assemblies including reimbursement to her and members of

the class for needed repairs already performed.

4

**PARTIES**

7.      Plaintiff, Anne Marie Haag, brings this action in an individual capacity and on behalf of all others similarly situated.

8.      Plaintiff Anne Marie Haag, at all relevant times is and was a resident and citizen of the city of Rochester, County of Monroe and State of New York.   In or about November 2009, Plaintiff Haag purchased a 2009 Santa Fe from a Hyundai dealership, located in Rochester New York.

9.      Upon purchase, the vehicle was registered and insured in the State of New York.  Plaintiff intended to use and did use her vehicle in New York.

10.      Defendant Hyundai is a foreign corporation, with its principal place of business and national headquarters located in California.  However, Defendant Hyundai is registered to do business in New York as a foreign corporation and has designated the New York Secretary of State as its agent for service of process in New York which, in turn, is authorized to serve Hyundai's registered agent in New York, which is National Registered Agents, Inc., Suite 140, 1666 Walt Whitman Road, Melville, New York, 11747.  Defendant designs, manufactures and sells automobiles and other vehicles under its Hyundai brand name throughout the United States, including in the State of New York.  In addition, Defendant's Santa Fe models are advertised, distributed and sold at multiple places of business in the State of New York through Defendant's dealers, including locations in: Mt. Kisco, Bedford Hills, Watertown and Rochester, New York, and other places.  These locations were, and are maintained by, Defendant's dealers for

the sale of Defendant's vehicles, including the Santa Fe and the Defendant has sold the model years in question in the State of New York to Plaintiff and members of the Class during the Class Period.

## JURISDICTION AND VENUE

11.     This Court may assert diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff resides in and is a citizen of New York and Defendant is a foreign corporation registered to do business in New York.

12.     This Court may assert diversity jurisdiction of this matter under the Class Action Fairness Act, in that the acts occurred in New York, Plaintiff is a New York citizen, Defendant is not a New York citizen and the Defendant has alleged in this action that the amount in controversy exceeds $5,000,000.

13.     The case is properly brought in this District as Plaintiff resides in the District and Defendant has sold defective vehicles in the District, maintains sales and service authorized dealers in the District and advertises its vehicles for sale in the District.

## UNCONSCIONABILITY AND
## UNENFORCEABILITY OF ANY ARBITRATION CLAUSE

14.     To the extent Defendant has made individual arbitration a requirement to enforce the warranty, such requirement is unconscionable as Plaintiff and the class cannot vindicate their rights in arbitration.  In particular, the arbitration agreement requires that

Plaintiff pay $275 for the arbitration filing fees, in addition to any individual expenses

they may incur (e.g., travel, time off from work or responsibilities, attorneys fees).   The

cost of the brake repair and/or replacement is approximately $350-$450.  As a result,

Plaintiff and members of the class could not expect to vindicate their rights or seek a

remedy in individual arbitration given the costs involved and the prospects of individual

recovery.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### Plaintiff's Factual Allegations

15.     Plaintiff purchased a new 2009 Santa Fe vehicle from a Hyundai dealership

located in Rochester, New York in or about July 2009, while residing in the State of New

York.  The vehicle was delivered to Plaintiff and/or put in service in or about July 2009.

16.     At the time of purchase, Hyundai, through its dealership, employees, agents

and servants represented to Plaintiff that it thoroughly inspected the vehicle, including its

braking system, and that the entire vehicle was in good condition and fit for its intended

purpose.  In fact, Defendant represented to Plaintiff and the Class members that such

inspection was key to the efficient operation of the vehicle.   Defendant further

represented to Plaintiff and members of the Class that their vehicles provided a high level

of performance and affordable price, and that Hyundai operated the world's largest

integrated automobile manufacturing facility which included complete state-of-the art

testing facilities.  Hyundai represented that the Santa Fe had a sophisticated design and

included "segment-leading standard safety features" which, by direct reference and by implication, the braking system would be a significant part.

17.     When the Plaintiff's vehicle had approximately 25,841 miles, Plaintiff became aware of problems with the brakes as a result of loud noise and vibration from the rear of the vehicle.

18.     Plaintiff brought the vehicle to, and contacted Defendant, through its authorized dealer and representative, who determined the brakes and rotors required replacement.  Plaintiff requested that Defendant cover the repair or replacement under 5 Year/60k Warranty as the vehicle was still within the 5 year 60,000 miles warranty, which request Defendant refused.

19.     As a result, Plaintiff had the brake pads and rotors replaced at her expense and paid $433.58.

20.     At the time, Plaintiff was told by the service personnel and Service Manager at Defendant's authorized dealer, that Santa Fe vehicles had a substantial issue with braking components remaining free from sticking and thereby failing, in part due to the failure of the rotors, calipers and/or brake assembly from remaining rust-free and sufficiently protected from corrosion.  Therefore, the Service Manager and Service Personnel indicated that the vehicles needed to be "pre-winterized" every year before the winter and that failure to "pre-winterize," would result, due to the quality of materials and workmanship, in premature failure of the brake assembly, rotors, pads and/or calipers.

21.     Accordingly, based on these admissions by Defendant's authorized representatives to Plaintiff, Plaintiff has first hand information that Defendant was aware of the inferior quality and workmanship of the brake rotors, calipers and brake assembly and that Defendant was aware that these defective components, would wear out and require replacement prematurely, at low mileages well within the warranty's express durational limitations.  Plaintiff's conversations above make plausible the fact that the Defendant knew but concealed that it was misinterpreting the warranty to include components (e.g., calipers, rotors and brake assembly) that were not in fact excluded by the express warranty.

**Defendant Hyundai's Conduct**

22.     Plaintiff subsequently learned that her Santa Fe, just like the other Class Vehicles, model years 2007 through 2012, had a continuing problem with their brake rotors, calipers and brake assemblies.  Plaintiff alleges that the problem with the 2007 vehicles' brakes first surfaced in or about 2006, when it became apparent that there was a manufacturing, materials and/or workmanship defect in the rotors, calipers and brake assemblies.

23.     Hyundai, nevertheless, continued to represent to new purchasers and/or lessees of Santa Fes, as it did with Plaintiff, that said Santa Fes including their brake assemblies, were properly manufactured, using proper materials and/or workmanship, were properly designed, in good working condition, and fit for their intended purpose.

24.     Hyundai, through its dealerships, agents, servants and employees, were put

9

on actual and/or constructive notice of the defective brakes in the Class Vehicles since at

least in or about 2006.  Thus, when Plaintiff subsequently purchased her Santa Fe in

2009, Hyundai knew, or should have known, that the brake assemblies on these vehicles

were defective.  Hyundai, nevertheless, failed to disclose the existence and nature of said

defects in any advertisements, agreements, publications, websites, owner manuals,

warranty agreements or literature given to new purchasers of the vehicle, including

Plaintiff and members of the Class.  Hyundai also failed to provide owners of the vehicle

with any written warnings or notices regarding the vehicle's defective brakes.  Further,

Hyundai refused to cover the cost of replacing these defective brakes claiming that such

components were not covered by the Basic Warranty, a fact which was concealed until

Plaintiff and the Class members sought the warranty coverage within the term of the

warranty.

25.    Further, even though Hyundai had actual knowledge of the defect in these

brake components in the Class Vehicles, it did not correct the defect and concealed the

existence of the defect in the Class Vehicles.

26.    While rotors may occasionally need to be turned to restore their braking

service, rotors, calipers and brake assemblies do not normally wear out and require

complete replacement during the normal life of the vehicle used under 100,000 miles.  In

fact, while Hyundai's Service and Maintenance Guide calls for the periodic inspection of

the braking system, it does not suggest or require the scheduled replacement of any rotors

or calipers in the braking system within the first 120,000 miles.

27.     One of the defects existing within the rotors, calipers and brake assemblies in the 2007 Santa Fe, is that the rotors are too thin and/or varying in thickness and not in conformance with customary thickness and uniformity which would otherwise be standard in the industry.  In addition, the caliper, rotors and brake assembly contain inferior and/or defective materials and/or workmanship inasmuch as they do not remain rust-free and have an unreasonably prevalent tendency to stick and fail even at low mileages.  All of the above is contrary to what proper materials, workmanship and design would have required.

28.     Defendant had the benefit of its pre-release testing, early service maintenance analysis and reports and data;  knowledge and examination of the specifications for the various brake parts (e.g., rotors, hubs, brake assemblies and caliper assemblies);  knowledge of materials; and knowledge through customer complaints to Hyundai directly and through online consumer websites including the complaint website maintained by the National Highway Transportation Safety Administration's Office of Defects Investigations ("NHTSA-ODI").   Yet, Defendant chose to continue to produce and sell Santa Fe vehicles with defective rotors, calipers and brake assemblies since it was less expensive to do so.

29.     Various complaints filed by purchasers of the Santa Fe vehicles with various internet bulletin board-type websites demonstrate the potential dangerous nature of the defective condition.  Defendant was aware of and had knowledge of these complaints and, therefore knew, prior to Plaintiff's purchase of her Santa Fe vehicle in

late 2009, that the problem was a widespread and common defect and not the result of mere isolated incidents unrelated to the defect.

    (a)  For example, on April 27, 2008, one consumer noted on [www.carsurvey.com](www.carsurvey.com) that "I have had my Santa Fe for almost 8 months and I am starting to have problems.  My rear brake caliper is seizing up and gouging the rotor."

    (b)  For example, on June 1, 2008, one consumer who owned a 2007 Santa Fe noted on the NHTSA-ODI complaint database, [http://www-odi.nhtsa,dot.gov/owners/](http://www-odi.nhtsa,dot.gov/owners/), that there was a "problem with calipers on vehicle sticking and not releasing the brakes from the rotor, causing the rotor and tire rim to reach temperatures of over 300 degrees."

    (c)  For example, on July 23, 2008, one consumer noted on [www.carsurvey.com](www.carsurvey.com) that "At 30,000 KM our 2007 Santa Fe also had the rear driver side brake fail. The pad wore down to the metal. My husband is a mechanic and said that the caliper frame is machined wrong and Hyundai is "cramming" the brakes in. With the brakes being wedged in, they seize and lock the whole time you drive, causing a safety issue and probably very poor fuel mileage. The dealership we go to also would not cover it, as we didn't pull the brakes off at 24,000km and "grind them down to fit", or lube the sliders on the caliper frame."

(d) For example, on July 28, 2008, one consumer who owned a 2007 Santa

Fe noted on the NTHSA-ODI complaint database, http://www-

odi.nhtsa.dot.gov/owners/ that, "My 2007 Hyundai Santa Fe limited

(16,600 miles) began making a very loud screeching/squealing noise

after about 20 minutes of driving that goes away when you even lightly

tap on the brake pedal. I took it to the Natick, MA Hyundai Service

Department, who said that they could not replicate the problem, but

suggested that I pay $89 for a rear brake servicing, which they

explained will clean any rust/corrosion on my rotors and will adjust the

rear brakes. I asked if they saw any signs of rust or corrosion on my

rear brakes when they were investigating the noise, and they couldn't

answer that. I asked if it is normal to have rust or corrosion or to

require an adjustment of the rear brakes in a car that is 1 year old, and

they said no. I elected to skip the rear brake service, and took the car

home, at which time it started making the noise again. I took it back

and had the mechanic go for a drive with me and he said it sounds like

the rear brake pad on the driver side slipped and needs to be fixed. He

said it is very common in the 2007 Santa Fe. I left the car to be fixed,

and when they called to let me know it was ready, they said it would

cost $89 for the rear brake service. If my brake pads slipped and it is a

known issue with this car, why was a forced to pay $89 to clean and

adjust the rotors? After some internet research and speaking with an

independent mechanic, I have learned that the caliper frame is

machined wrong and Hyundai is cramming the brakes in, causing the

brake pads to slip, or even worse, causing the brakes to seize. My car is

under Warranty and it is unacceptable that after a year of driving it

(purchased brand new) I had to pay for what is clearly poor design and

construction by Hyundai."

(e)   For example, on September 17, 2008, one consumer who owned a

2007 Santa Fe noted on the NTHSA-ODI complaint database,

http://www- odi.nhtsa.dot.gov/owners/, that, "at 21,000 mile the rear

brake calipers had to be repaired for sticking and pads replaced at

owners expense. Owner told by Dealership the cause was 'probably

from salt used to treat road surfaces during snow removal'. Hyundai

refused Warranty claim and would not admit improper materials used

for braking system."

(f)   For example, on September 18, 2008, one consumer noted on

www.carsurvey.com that "My 2007 Santa Fe has less than 23,500 kms.

Back brakes almost worn out. Pads had to be replaced and rotors

ground down to fit properly. $309 later, I find out that the brakes are

NOT covered under the warranty.. It seems that brakes fall under the

same category as wipers!! Imagine.. they are all "wearable parts"...

well so is the rest of the Santa Fe.. so does that mean there is nothing

covered under their 5 yr 100,000 km warranty... very disappointed..

may go back to Honda."

(g) For example, on October 3, 2008, one consumer noted on

www.carsurvey.com that "We've also got a 2007 Santa Fe with

27,000kms on it. Same thing as everyone else. Brake problems.

Driver's rear brake seized up and wore the outside pad down to the

metal. Huge gouge in the rotor now. Had to order new pads and a new

caliper. Not covered under warranty."

(h) For example, on November 17, 2008, one consumer who owned a

2007 Santa Fe noted on the NTHSA-ODI complaint database,

http://www- odi.nhtsa.dot.gov/owners/, that, "brake failure almost

caused me to skid through a red light that was at 50 miles a hour

highway intersection. The car was Purchased new 7/18/2007, and was

recently inspected by the dealer as part of a 15,000 mile check up at

that time I expressed a concern about the car's hesitation upon

acceleration November 5, 2008 I was told that my 2007 Hyundai Santa

Fe had it's rear brakes locked on and the whole rear brake system

needed to be replaced and I skidded because they had failed and my

front brakes were doing all the work. I was told by many car specialists

that this should not have happened with a vehicle under 18 months

with only 15,198 miles and that it is a problem with Hyundai's inferior

brake system and that it will happen again! I fear that next time, I won't

be able to stop and lost of life may occur."

(i)   For example, on November 22, 2009, one consumer noted on

www.consumeraffairs.com that "The thing that bothers me the most is

that at 16,000 miles and two years old, I was told my brake calipers

were corroded and sticking, overheating my discs. I asked when they

could fix them and they said it wasn't covered on their warranty and I

would have to pay. What good is a bumper to bumper warranty when

substandard materials are used and not covered."

30.     All major vehicle manufacturers meticulously monitor field information

and internet complaints relating to the safety and quality of its business, brand and

vehicles and Hyundai would be grossly negligent and the odd outlier if it failed to do the

same as its competitors.

31.     That the 2007 – 2012 Santa Fe vehicles were experiencing significant

problems with calipers, rotors and brakes was known to Defendant.  Accordingly, the

premature wearing, sticking, grinding and/or premature failure of the brakes is caused by

a product defect.  It was also known to Defendant that this defect caused a potentially

dangerous driving condition if not corrected when experienced by the vehicle owner.

32.     On or about November 29, 2010, Defendant reported a recall to NHTSA of

1,783 model year 2011 Hyundai Santa Fe vehicles manufactured beginning September

28, 2010 through November 25, 2010 for problems with their rear brake calipers.

Hyundai acknowledged in the defect notice that "some rear brake calipers installed in the

Santa Fe vehicles . . . may have been improperly machined. . ."

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on her own behalf and on behalf of all other

persons similarly situated, pursuant to the Rule 23, *et seq.* of the Federal Rules of Civil

Procedure*,* on behalf of a class, consisting of consumers who purchased or leased a Class

Vehicle in New York State.   Excluded from the class is Defendant, officers and directors

of the company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Defendant has or had

a controlling interest.  Plaintiff asserts that the Class may be divided into two subclasses.

The first consists of all Class members who have experienced some or all of the

aforementioned defect and have expended sums to repair the defect when, in fact,

Defendant is legally responsible to pay for the same (the "Damages Subclass").  The

second seeks declaratory relief, and consists of Class members who will have or may

have the defective rotor problem manifest in the future for which Defendant, though

legally responsible, will not cover or pay for (the "Declaratory Relief Subclass").  Some

Class members may overlap the subclasses, since they have paid for a replacement, and

thereby suffered damages, but to the extent they may experience the defect and require

additional rotor/caliper/ assembly replacement beyond that for which they paid, they are

entitled to declaratory relief.  Except where otherwise stated, the term "Class" includes both subclasses.

34.     The Class which Plaintiff seeks to represent is defined as:

> All persons who purchased and/or leased a 2007 to 2012 Santa Fe automobile in the State of New York.  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.
>
> <u>Excluded from this Class</u> are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased, for resale, from Defendants, or any entity related to or affiliated with Hyundai, a new Santa Fe model year 2007 to 2012, or any person who has an action for damages for personal injury or death or property damage against Defendant.

## NUMEROSITY

35.     The members of the Class are so numerous that joinder of all members is impracticable.  The Class is made up of hundreds or thousands of members.  The precise number of Class members can only be ascertained through discovery, which includes Defendant's sales, service, maintenance and complaint records.  The disposition of their claims through a class action will benefit both the parties and this Court.

## COMMON QUESTIONS OF LAW AND FACT

36.     There is a well-defined community of interest in the questions of law and fact involved affecting the Plaintiff and members of the Class.

37.     The questions of law and fact common to the Class, and in particular, the

Damages Subclass, predominate over questions which may affect individual members,

and include the following:

(a)     Whether the rotors, calipers and brake assembly used by Defendant in its Class Vehicles, model years 2007 - 2012 were defective in that the caliper pin and/or guide was defective, and/or rotors were too thin and/or contained such excessive variation in thickness  and/or the rotors, calipers and brake assembly failed to be sufficiently protected from premature corrosion,  failed to conform to industry standards or contained other substantial defects in the manufacturing, materials and workmanship.

(b)     Whether Santa Fe vehicles possess the brake system defect or defects alleged;

(c)     Whether the brake system defects constitute a breach of express warranty;

(d)     Whether the calipers, rotors and/or brake assembly are included in the 60,000 mile/60 month express warranty (e.g., Basic Warranty);

(e)     Whether the Defendant violated New York's General Business Law Section 349;

(f)     Whether members of the Class are entitled to be notified and warned about the brake system defect and are entitled to the entry of final and injunctive relief compelling Defendant to issue a notification and warning to all class members concerning such a defect;

(g)     Whether Class members are entitled to actual and/or statutory damages and if so, the appropriate amount thereof;

(h)     Whether Defendant deliberately misrepresented or failed to disclose or concealed material facts to Plaintiff and the Class members;

(i)     Whether Defendant gave an express warranty which was limited by time despite Defendant's knowledge that the braking defect would become apparent after the warranty period; and

(j)     Whether the durational limits of the Basic Warranty as applied to
this significant defect are unconscionable and therefore
unenforceable.

## TYPICALITY

38.     The claims and defenses of Plaintiff, as the representative Plaintiff, are

typical of the claims and defenses of the Class because Plaintiff and the Class members

all owned Class Vehicles with defective brake assemblies which were selected, designed,

manufactured and sold by Defendant.  Plaintiff, like all class members, purchased her

Santa Fe without having received any warning or notification from the Defendant of the

brake defect.  Plaintiff also qualifies as typical of each subclass.

## ADEQUACY OF REPRESENTATION

39.     Plaintiff, as the representative Plaintiff, will fairly and adequately assert and

protect the interests of the Class as:

(a)     Plaintiff has hired attorneys who are experienced in prosecuting

class action claims and will adequately represent the interests of the

Class; and

(b)     Plaintiff has no conflict of interest that will interfere with the

maintenance of this class action.

## PREDOMINANCE

40.     With respect to the Class, questions common to the class predominate over

those which only affect individual owners.  This case involves one model car.  The

braking system parts are interchangeable from one model year to the next.  The brakes

are defective regardless of who was driving them or how they were being driven.

Liability will primarily be predicated upon the jury's evaluation of the materials selected,

manufacturing, workmanship and design of the brake assembles, the defective

components and Defendant's awareness of the problem and its effort to resolve it; and

upon the terms of the express warranty, Defendant's uniform misinterpretation of those

terms and its concealment of such misinterpretation until the Class member sought

coverage.

## SUPERIORITY

41.     A class action provides a fair and efficient method for the adjudication of

controversy for the following reasons:

(a)     The common questions of law and fact set forth above predominate

over any questions affecting only individual Class members;

(b)     The Class is so numerous as to make joinder impracticable.  The

Class, however, is not so numerous as to create manageability

problems.  There are no unusual legal or factual issues which would

create manageability problems;

(c)     Prosecution of a separate action by individual members of the Class

would create a risk of inconsistent and varying adjudications against

Defendant when confronted with incompatible standards of conduct;

21

(d)     The claims of the individual Class members are small in relation to

the expenses of litigation, making a class action the only procedure

in which Class members can, as a practical matter, recover; and

(e)     A class action would be superior to and more efficient than

adjudicating thousands of individual lawsuits.

## ESTOPPEL FROM PLEADING AND TOLLING OF
## APPLICABLE STATUTES OF LIMITATIONS

42.     Plaintiff hereby incorporate by reference each of the preceding allegations

as though fully set forth herein.

43.     Defendant is estopped from relying upon any statutes of limitation by

reason of its fraudulent misrepresentation, suppression and concealment of material facts,

and any applicable statutes of limitation are tolled by such conduct.

## FIRST CAUSE OF ACTION

**(Deceptive Trade Practices)**
**(Violation of General Business Law Section 349 Deceptive Acts and Practices)**

44.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

45.     Plaintiff asserts this cause of action on behalf of herself and the Class.

46.     Defendant's practices, acts, policies and course of conduct, as described

above, were intended to induce, and did induce, Plaintiff and the Class Members to

purchase and/or lease the above-mentioned Vehicle with defective brake system design.

22

47.     Defendant sold and/or leased the Class Vehicles knowingly concealing that they contained the manufacturing, materials and/or workmanship defects alleged; and concealing Defendant's deliberate and uniform decision to misinterpret the warranty to consider as excluded components which by the terms of the warranty were, in fact, not excluded.

48.     Defendant's practices, acts, policies and course of conduct are actionable in that:

(a)     Defendant actively and knowingly misrepresented to Plaintiff and the Class Members at the time of purchase or lease  that the Class Vehicles, including the brake components' manufacturing, materials, design and/or workmanship defects of the brake systems of said vehicles, did not contain a material defect, were in good working order, not defective and merchantable;

(b)     Defendant failed to give adequate warnings and notices regarding the use, defects and problems with the brake system defect to consumers who purchased or leased said Class Vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Class Vehicles' braking systems;

(c)     Defendant failed to disclose to Plaintiff and the Class Members, either through warnings or recall notices, and/or actively concealed the fact from them that the brake system was defective, despite the fact that it learned of such defects in at least as early as 2006;

23

(d)     Defendant's actions and/or omissions caused Plaintiff and the Class Members to expend sums of money at its dealerships and elsewhere to repair and/or replace the brake system and/or brake system components, despite the fact Defendant had prior knowledge of the defects at the time of placing said vehicles into the stream of commerce; and

(e)     Defendant occasionally, through its agents and representatives, has admitted to some Class Vehicles owners or lessees by its words and action, that the defect should be covered by its warranties and denied this to others.  Defendant thereby maintained a secret warranty practice for some while denying it for others, thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

(f)  Defendant deceptively and falsely omitted the rotors, brake assembly and/or calipers from the express warranty's exclusions thereby concealing from Class members and/or actively misleading them into believing such parts were covered by the express warranty while Defendant, all the while, intended to misinterpret its warranty to exclude such parts, a fact such Class member would not learn until seeking warranty coverage for such component.

49.     Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable commercial practice in that Defendant has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the brake system.

50.     In making these misrepresentations of fact and/or material omissions to

24

prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

51.     Members of the public were deceived by and relied upon Defendant's affirmative misrepresentations and failures to disclose.

52.     Such acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle.  Said deceptive acts and practices aforementioned are material.  The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 349.

53.     As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the Class Members have been damaged as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, in an amount to be proven at trial.

54.     As a result, Plaintiff and the Class Members seek restitution of all monies that Hyundai received as a result of selling the above-mentioned vehicles to Plaintiff and the Class Members with inherent defects at the time of purchase and/or lease, and by forcing Plaintiff and the Class Members to expend substantial sums of money for the repair and/or replacement of the vehicles' defective brake system and/or component parts, despite the fact that Defendant had prior knowledge of the Class Vehicles' defects.

Plaintiff is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial, when the same has been ascertained.

55.    In addition, Plaintiff seeks punitive damages and reasonable attorneys' fees. The Declaratory Judgment Subclass Members seek a declaration that their defective brake systems must be repaired at Defendant's expense and fall within the Basic Warranty.

## SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

56.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

57.    Plaintiff asserts this cause of action on behalf of herself and the Class.

58.    Plaintiff and the Class members have entered into certain written warranty agreements with Hyundai.  Pursuant to the Basic Warranty, Hyundai agreed it would provide Plaintiffs and the Class members with Santa Fe vehicles that were in proper working order and would make all such replacements or repairs "found to be defective on material or workmanship" including with respect to the components of the braking systems (e.g., rotors, calipers, hubs, brake assemblies and pads) for each vehicle. Hyundai was therefore obligated to repair and/or service any defects or problems with the braking systems rising out of such defect, that Plaintiff and the Class members experienced.  In exchange for these duties and obligations, Hyundai received payment of

26

the purchase or lease price for the above-mentioned Santa Fe vehicles from Plaintiff and the Class members.

59.    The Basic Warranty does not exclude the failure of the rotors, calipers or brake assembly if occurring within 60,000 miles/60 months.

60.    The Basic Warranty's express terms concerning specified components of the braking system was breached by Defendant with respect to Plaintiff and all Class members who have not exceeded the 60,000 mile/60 months, because Defendant has refused to repair the premature brake failure, including the rotors and calipers, arising from the defect for Plaintiff and Class members even when its symptoms appear within the 60,000 miles/60 months.  Defendant, despite its pre-existing knowledge of the defective components, wrongfully asserts that the premature brake failure is not covered under the warranty and/or is "normal wear and tear."

61.    In addition, Defendant is aware that the defect will continue to result in brake failure even after the warranty period had lapsed and such conduct on the part of Defendant is patently unconscionable, rendering the warranty limitations unenforceable, since Hyundai was aware of basic defects in the brake components prior to selling or leasing the Class Vehicles and knew or should have known that the brakes would fail prematurely, and limited the express warranty, as such, in order to render such warranty unusable or illusory.  Moreover, Hyundai used its superior knowledge of the existing defect to offer a warranty which it knew or should have known would not cover the brake defects known to Hyundai to exist in the vehicles at the time of purchase or lease by

Plaintiff and members of the Class.  Hyundai breached the express warranty in providing Plaintiff and the Class with Santa Fe vehicles with defective rotors, calipers and/or brake assemblies which is has refused to repair or replace.

62.     Plaintiff gave notice to Defendant of her respective vehicle's defect through its Dealer and agent and through its customer service division, and gave Defendant a chance to repair the defect under the Basic Warranty, which Defendant refused to do.

63.     Hyundai also violated the Basic Warranty and any implied covenant of good faith inherent in such agreement by selling Plaintiff and the Class members vehicles with limited warranties under circumstances in which Hyundai knew or should have known that the defective braking systems would fail prematurely beyond the warranty period.

64.     As a result of the foregoing, Plaintiff and the Damages Subclass members are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Defendant acted in a manner contrary to public purpose and with intent to exclude such defective brake systems.  In addition, Plaintiff seeks a declaratory judgment related to the breach of express warranty claim, which is a justicable dispute involving a common issue, as set forth hereinbelow, in the Third Claim.

65.     In addition, with respect to Class members whose repairs were beyond the warranty period, but failed within a reasonable period thereafter, the durational limits of the warranty are unconscionable pursuant to the New York Uniform Commercial Code

Sec. 2-302(1) and (2), because, as alleged herein, Hyundai knew that the brake

components were defective and concealed or intentionally failed to reveal this material

information to Class members in order to cause them to wait until after the warranty

period to seek repairs.  In addition, the Defendant intentionally limited the warranty

period so as to insure it would not be responsible for what it knew was a defect which

otherwise would or should have been fixed by it under the warranty.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment for Declaratory Relief Subclass)

66.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this Complaint as though set forth fully herein.

67.     Plaintiff asserts this cause of action on behalf of herself and the Declaratory

Relief Subclass.

68.     There is a justiciable dispute as to whether the defective braking systems,

particularly the defective rotors, calipers and/or brake assemblies, are and/or should be

covered under the Basic Warranty by Defendant.

69.     By virtue thereof, Plaintiff seek a declaratory judgment declaring that the

remedial work necessary to correct the defect, alleged herein with respect to the vehicles'

braking systems are covered warranty claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly

situated, prays for a judgment against Defendant as follows:

1.     For an order pursuant to Fed. R. Civ. Proc., Rules 23(b)(2), (b)(3) and (c)(4), certifying the Class and/or subclasses, appointing Plaintiff as representatives of the Class and each Subclass, and appointing the law firms representing Plaintiff as counsel for the Class;

2.     For a declaration that the remedial work necessary to correct the defective brakes is covered by the Basic Warranty;

3.     For compensatory and/or statutory damages sustained by Plaintiff and the Damages Subclass;

4.     For compensatory damages and/or restitution or refund of all funds acquired by Defendant from Plaintiff and the Damages Subclass as a result of Defendant's unlawful, unfair, fraudulent, deceptive and unconscionable practices, described hereinabove, violating the Consumer Protection Statutes of New York, including actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial;

5.     Trebling of damages suffered by the Class and/or appropriate subclass;

6.     Payment of costs and expenses of suit herein incurred;

7.     Both pre-and post-judgment interest on any amounts awarded;

8.     Payment of reasonable attorneys' fees and expert fees; and

9.     Such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 8, 2014

By:     s/ *Elmer Robert Keach*
            Elmer Robert Keach, III, Esquire
            **LAW OFFICES OF ELMER**
            **ROBERT KEACH III, P.C.**
            1040 Riverfront Center
            P. O. Box 70
            Amsterdam, NY  12010
            Tel:   (518) 434-1718

            Gary S. Graifman, Esq.
            Michael L. Braunstein, Esq.
            **KANTROWITZ, GOLDHAMER**
            **& GRAIFMAN, P.C.**
            747 Chestnut Ridge Road
            Chestnut Ridge, New York 10977
            Tel:   (845) 356-2570

            Gary E. Mason, Esq.
            Nicholas A. Migliaccio, Esq.
            **WHITFIELD BRYSON**
            **& MASON, LLP**
            1225 19th St. NW, Suite 600
            Washington, D.C. 20036
            Tel:   (202) 429-2290

            ***Attorneys for Plaintiff***