UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
ANNE MARIE HAAG, on behalf of themselves : 
and all others similarly situated, :
 :
                       Plaintiff, :   Case No. 6:12-cv-06521-DGL
 :
        v. :
 :
HYUNDAI MOTOR AMERICA, :
 :
                       Defendant. :
---------------------------------------------------------------x

## DEFENDANT HYUNDAI MOTOR AMERICA'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant Hyundai Motor America ("HMA") respectfully submits this response to Plaintiff's Notice of Supplemental Authority ("Notice" or "Not."). Plaintiff cited two, out-of-circuit decisions in her Notice. Both are distinguishable and highlight several deficiencies in Plaintiff's theory of the case and supporting evidence.

The first decision has little to say about the motions for class certification and to exclude Plaintiff's experts that are currently pending before this Court. The reason is simple: it did not address these types of motions. *See Little v. Kia Motors Am., Inc.*, 190 A.3d 502 (N.J. Super. Ct. App. Div. 2018). Rather, the *Little* court considered a post-trial motion for judgment notwithstanding the verdict. *See id.* at 504-05. In reviewing that motion, the *Little* court focused on whether damages could be awarded on a class-wide basis using a damages formula for repair costs offered by the plaintiff's expert, King. *See id.* 509-17. Similarly, the court's typicality analysis addressed how the number of repairs that were performed on the plaintiff's vehicle fit within King's damages model. *See id.* at 518.

1

None of these types of issues are before this Court. Plaintiff here has never identified an expert methodology for awarding damages. *See* Dkt. 84 (HMA's Opp. to Class Cert.) at 27-28 n.27 (explaining that "the need to rely on individualized proof to show repair costs" weighs against certification) (internal quotation marks and citations omitted).[1] Similarly, HMA's typicality argument is entirely distinct from that addressed in *Little*. *See* Dkt. 84 at 40 (arguing that Plaintiff's failure to maintain her vehicle individually precludes her from recovery).

Moreover, the issues that are central here to the parties' dispute over class certification—namely, whether common issues of liability, causation, and injury predominate—did not feature in the *Little* decision. 190 A.3d at 504-05, 518.[2] And contrary to Plaintiff's assertion, *see* Not. at 3, the *Little* court did not reject a challenge to King's merits (as opposed to damages) opinion in its decision, but only described King's merits opinion in the background section. *See* 190 A.3d at 506, 508.[3] The cursory treatment of King's merits opinion is perhaps explained by the fact that the *Little* defendant "did not deny the [vehicles] had brake problems." 190 A.3d at 506, 508. Here, by contrast, Plaintiff is flat wrong when she asserts that HMA "admitted" the existence of

---

[1] In addition, Plaintiff has failed to satisfy a certification requirement on the question of injury that is specific to the Second Circuit—namely, that she proffer "common evidence [that] all class members suffered *some* injury" as a result of HMA's supposed conduct. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (internal quotation marks and citations omitted).

[2] Notably, a class was certified in *Little* more than *15 years ago* in a decision interpreting the New Jersey state court version of Rule 23, rather than the federal version and more recent jurisprudence interpreting it. While Plaintiff attempts to bolster her reliance on the *Little* decision by emphasizing that it discussed a prior opinion, Plaintiff previously cited that opinion to this Court. *See* Not. at 2. In any event, that earlier opinion is distinguishable. *See* Dkt. 84 at 16 n.14 (distinguishing *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 38 (Pa. 2011)).

[3] In any event, that summary reveals that the bases for King's merits opinion were more extensive than those relied upon by Plaintiff's experts, neither of whom even inspected her vehicle. *Compare id.* at 506 (explaining that King inspected the plaintiff's vehicle), *with* Dkt. 79-14 (Memo. in Support of Mot. to Exclude Dr. Richard Lynch) at 23-24; Dkt. 80-12 (Memo. in Support of Mot. to Exclude David McLellan) at 8.

\\DC - 029016/000014 - 12696806 v3

an alleged defect. *Compare* Not. at 2 n.1 *with see* Dkt. 84 at 20-21, 25 (denying the existence of an alleged defect and explaining why the so-called HATCI report is not an admission by HMA).

In addition to the procedural posture, the claims and facts in *Little* were markedly different. Because the jury rejected the plaintiff's consumer protection claim, the *Little* decision concerned only express and implied warranty claims. *See* 190 A.3d at 504. Conversely, all that remains in this case is a consumer protection claim as this Court has dismissed Plaintiff's warranty claims. *See* Dkt. 124 at 5 (granting summary judgment on the express warranty claim); Dkt. 33 at 5 (dismissing the implied warranty claim).[4] The defect theory in *Little* also was completely distinct. There, the plaintiff asserted that the *front* brakes in certain Kia vehicles did not properly dissipate heat. *See Little*, 190 A.3d at 506. Plaintiff in this case, however, alleges that the *rear* brakes in certain Hyundai vehicles are defective in that they supposedly corrode and require replacement prematurely. *See* Dkt. 69 (Plf.'s Memo. in Support of Class Cert.) at 1.[5] In addition, the evidence of an alleged defect in the *Little* case was fundamentally different. For example, the rate of warranty claims to class vehicles in that case was 92%, *see Little*, 190 A.3d at 506, while in this case that rate is, at most, only 1.5%. *See* Dkt. 79-14 at 18. Finally, the *Little* plaintiff (1) identified an unsatisfied 12,500-mile specification and (2) offered expert testimony that front brake pads should last 20,000 miles. 190 A.3d at 506-07, 512-13. Here, Plaintiff

---

[4] Plaintiff incorrectly suggests that this Court identified questions "common to the class" when ruling on summary judgment. Not. at 3. Instead, the Court simply conducted the traditional summary judgment inquiry, identifying certain "questions of material fact" specific to Plaintiff's individual consumer protection claim and dismissing another of her claims that implicated no such questions. Dkt. 124 at 6.

[5] Plaintiff's assertion that Kia is somehow "related to" HMA, Not. at 2 n.1, does not change the fact that the *Little* case involved compact passenger cars of a completely different make, model, and year than the sports-utility vehicles in this case. Moreover, the 1997-2000 model year vehicles at issue in *Little* would have been designed before 1998—the year when, according to publicly-available information, Hyundai Motor Company acquired Kia Motor Company. *See* https://www.nytimes.com/1998/10/19/business/hyundai-wins-auction-to-take-over-kia-motors.html (last visited Oct. 2, 2018).

offers no specification or testimony regarding how long rear brake rotors and pads should last before being replaced due to corrosion. In any event, the brake pads on her Santa Fe vehicle lasted longer than 12,500 or even 20,000 miles (the standards at issue in *Little*). *See* Dkt. 47 (Am. Compl.) ¶¶ 17-19 (alleging that Plaintiff replaced her brake pads only once during the time she owned her vehicle, when it had more than 25,000 miles on it). For all these reasons, *Little* does not support granting Plaintiff's motion for certification or denying HMA's motions to exclude.

Next, Plaintiff cites a district court decision in support of two, inapplicable propositions. *See In re Arris Cable Modem Consumer Litig.* ("*Arris*"), No. 17-CV-01834-LHK, 2018 WL 3820619 (N.D. Cal. Aug. 10, 2018). First, the *Arris* court found that the plaintiffs "need not prove the existence of the defect" in order to certify a California consumer protection claim. *Id.* at *5, *18 (quoting *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 539 (9th Cir. 2015)). Plaintiff's reliance on this finding is misplaced; courts deciding whether to certify claims under New York and other states' laws also have not insisted on definitive proof of a defect. But such courts have required the plaintiff to produce reliable, class-wide *evidence* of a common defect. *See Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 510 (S.D.N.Y. 2011) ("The failure to specify an alleged common defect provides a further basis for concluding that plaintiff has not demonstrated predominance."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 604 (S.D.N.Y. 1982) (explaining that the "plaintiffs' allegations of 'common defects' can[not] transform this litigation . . . into an action where common questions of fact or law predominate").[6] In this case, neither Plaintiff's experts nor the anecdotal reports from discovery

---

[6] *See also Payne v. FujiFilm U.S.A., Inc.*, No. CIV. A. 07-385 GEB, 2010 WL 2342388, at *3 (D.N.J. May 28, 2010) ("Where plaintiffs' claims are all based on an alleged common product defect, courts in this District have recognized that even the basic issue of whether the common defect exists may defeat predominance and render the class action unmanageable."); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 373 (E.D. La. 1997) (concluding that the plaintiffs' evidence "simply d[id] not equate with credible classwide proof of a common defect

provide reliable, class-wide evidence of a common defect. *See* Dkt. 84 at 20-26; *Arris*, 2018 WL 3820619, at *18 (explaining that it remains the plaintiff's "burden" at class certification "to establish that the existence of the defects is subject to common proof").

Moreover, the finding of predominance in *Arris* depended on the connection between the plaintiffs' defect theory and their theory of injury. They asserted that a modem was prone to latency, which can delay data communications over a network. *See Arris*, 2018 WL 3820619, at *1, *18. Crucially, the plaintiffs sought to recover the difference between the amount they paid and the actual value of modems with the latency defects, and the plaintiffs offered a damages model that was consistent with this theory. *See id.* at *7, *25. Thus, the court found it irrelevant whether a particular user actually experienced delays due to latency as the court concluded that each was injured at the time of purchase. *See id.* at *19.

There is no similar connection in this case between Plaintiff's defect theory and her theory of injury. She does not assert—much less offer a damages model suggesting—that the putative class overpaid for their vehicles at the time of purchase and has waived any argument that those vehicles have, since purchase, diminished in value. *See* Dkt. 84 at 30-32. Thus, Plaintiff must establish with class-wide evidence that the putative class vehicles contain a common defect resulting in premature repairs due to corrosion. She cannot do so. The evidence suggests that only a small fraction of putative class vehicles required brake repairs for *any* reason. *See* Dkt. 84 at 28-30; *In re Canon Cameras*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (explaining that a plaintiff cannot "simply show that most or all of the cameras in issue contained 'defective' parts" that have not yet malfunctioned).

---

for purposes of class certification"); *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 269 (D.D.C. 1990) (finding that, to obtain class certification, the plaintiffs "must present credible classwide proof that the Ford vehicles in question suffered from some common defect").

5

Second, the *Arris* court found that the plaintiffs' expert did not need to conduct independent testing in that case, but could rely instead on data from tests performed by the defendant and its supplier. *See* 2018 WL 3820619, at *20-21. Yet, the court acknowledged that "there may be circumstances, depending on the purpose and subject of the expert's testimony, where independent testing would be necessary to support the expert's opinion[.]" *Id.* at *21. This is one such case. Unlike in *Arris* where the defendant did "not dispute the reliability of the underlying [test] data[,]" *id.*, HMA has explained why none of the discovery material Plaintiff's experts cite form a reliable basis for their opinions that the brake components at issue are composed of inadequate materials, Dkt. 111 (Reply in Support of Mot. to Exclude Dr. Richard Lynch) at 4-10, Dkt. 112 (Reply in Support of Mot. to Exclude David McLellan) at 4-9—especially considering the undisputed evidence that the Santa Fe's peer vehicles use "substantially similar" materials for their brake components, Dkt. 112 at 5-6.

Instead, the instant case is more akin to *Cates v. Whirlpool Corp.*, No. 15-CV-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017) than *Arris*. In *Cates*, the court excluded the plaintiff's expert and refused to certify a consumer protection claim involving allegedly defective ovens. Significantly, the expert there did more than either Lynch or McLellan by testing the ovens of the two named plaintiffs. Nonetheless, the court concluded that there was "too large an analytical gap between [the expert's] methodology and his conclusion that all 2,000,000 Ovens suffer from a common defect." *Id.* at *13. Among other things, the court was troubled by the expert's failure to (1) propose an alternative design, (2) confirm his theory by testing allegedly non-defective ovens of other brands, or (3) account for alternative explanations. *Id.* at *13-15.

Lynch's and McLellan's opinions suffer from similar flaws. And because of these flaws and others, they lack an adequate basis to conclude that "30,000 putative class vehicles contain

6

alleged materials defects that *inevitably* cause supposedly premature corrosion and the replacement of brake components." Dkt. 111 at 4. Thus, their testimony should be excluded.

| | |
|---|---|
| Dated: October 2, 2018 | Respectfully submitted, |
| | By: /s/Brian P. Crosby<br>Brian P. Crosby<br>Timothy J. Graber<br>GIBSON, MCASKILL & CROSBY<br>69 Delaware Avenue, Suite 900<br>Buffalo, New York 14202-3866<br>Telephone: (716) 856-4200<br>Facsimile: (716) 856-4013<br>E-mail: tgraber@gmclaw.com<br>bcrosby@gmclaw.com |
| | Michael L. Kidney<br>James W. Clayton<br>HOGAN LOVELLS US LLP<br>555 Thirteenth Street, N.W.<br>Washington, DC 20004<br>Telephone: (202) 637-5600<br>Facsimile: (202) 637-5910<br>E-mail: michael.kidney@hoganlovells.com<br>james.clayton@hoganlovells.com |
| | *Attorneys for Defendant Hyundai Motor America* |

## **CERTIFICATE OF SERVICE**

  I hereby certify that on October 2, 2018, I electronically filed the foregoing with the Clerk of the Western District Court using its CM/ECF system, which will send notification of such filings to all the CM/ECF participants on this case.

              /s/Brian P. Crosby
              Brian P. Crosby